CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 26 2019
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | |
|---|---|
| United States of America<br>v.<br>Chad Matthew CUSTER<br><br>Defendant(s) | )<br>)<br>) Case No. 7:19 MJ 123<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2017- Present__ in the county of __Roanoke__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 USC 5861 | Make, possess, or receive a firearm as defined in the National Firearms Act (NFA). |
| 21 USC 846 and 841(a)(1) | Conspire to possess with intent the intent to distribute and to distribute controlled substances, including marijuana, a Schedule I controlled substance. |
| 18 USC 924(c) | Possession of a firearm in furtherance of drug trafficking. |

This criminal complaint is based on these facts:
See attached.

☑ Continued on the attached sheet.

_____
Complainant's signature
ATF, TFO

William Engel, Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/26/2019

City and state: Roanoke, VA

_____
Judge's signature

Robert S. Ballou, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHAD MATTHEW CUSTER | Case No. 7:19 MJ 123 |

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, William Engel, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a complaint and arrest warrant under Rules 3, 4, and 4.1 of the Federal Rules of Criminal Procedure.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses in violation of Title's 18, 21 and Title 26 of the United States Code.

3. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, and Firearms and Explosives (ATF), and have been since October 2018. I have successfully completed the Bureau of Alcohol, Tobacco, Firearms and Explosives, Task Force Officer (TFO) training in the Washington, District of Columbia held at the Bureau of Alcohol, Tobacco, Firearms and Explosives Federal Headquarters. I have been employed in a law enforcement capacity since 1994 as a Police Officer; Police Detective; Police Detective Sergeant; Investigative and Patrol Lieutenant; law enforcement trainer and mentor in Afghanistan, employed by the Department of State and Department of Defense; and currently as a Task Force Officer. I have received training

in various aspects of criminal law enforcement, including but not limited to criminal investigations involving arson, explosives, narcotics and firearms. Since becoming a TFO with ATF, I have provided sworn testimony before the Federal Grand Jury and in the United States District Court in reference to violations of the Federal firearms and narcotics laws.

4. As a result of my training and experience as an ATF Special Agent, I am familiar with federal criminal laws and know that it is a violation of:

Title 21, United States Code, Sections 846 and 841(a)(1), to conspire to possess with the intent to distribute and to distribute controlled substances, including marijuana and its derivatives;

Title 18, United States Code, Section 924(c), to possess a firearm in furtherance of a drug trafficking offense; and

Title 26, United States Code, Section 5861, to make, possess, or receive a firearm as defined in the National Firearms Act (NFA).

5. The facts in this affidavit come from my training and experience as well as information obtained from other law enforcement officers and interviews with witnesses. This affidavit is intended only to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATEMENT OF PROBABLE CAUSE

6. In or about October 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) opened an investigation into drug distribution and violent crime involving Chad Matthew CUSTER and his associates, including Darion Mante'z HARVEY and Aaron Lee WOODS. The ATF investigation was opened after a shooting incident on July 10, 2018, at 1642 Eastern Avenue, in Roanoke, Virginia, resulting in the death of Subject #1.

2

7. On information and belief, WOODS, CUSTER, HARVEY and others have been responsible for selling large quantities of marijuana in and around the Roanoke Valley. As set forth herein, 1642 Eastern Avenue, in Roanoke, Virginia, was a principal site of operation for WOODS, CUSTER, HARVEY and their associates from no later than the summer of 2017 until the summer of 2018.

8. During the course of the investigation, agents encountered a source of information, SOI#1, who had personal knowledge of these distribution activities. SOI#1 met WOODS in the early part of 2017 through a mutual friend. According to SOI#1, WOODS was renting and living at 1642 Eastern Avenue in 2017. During the summer and fall of 2017, SOI#1 "hung out" or socialized with WOODS and others at the Eastern Avenue address.

9. During these visits, SOI#1 observed WOODS distributing large quantities of marijuana from the residence. SOI#1 described the Eastern Avenue address as a place where individuals would stream in and out on a routine basis throughout the afternoon and evenings in order to purchase quantities of marijuana from WOODS. As these transactions were occurring, SOI#1 and others would be "hanging out" at Eastern Avenue, playing video games and smoking marijuana. SOI#1 stated that WOODS kept his marijuana at times in plain view on a coffee table in the front room of the residence. SOI#1 described the bags containing the marijuana as large, clear, vacuum-sealed plastic bags. During time spent at WOODS' Eastern Avenue residence, SOI#1 became friends with a WOODS associate identified here as Roommate #1 (RM#1). SOI#1 stated that RM#1 was living with WOODS at that address.

10. RM#1 was shot at the Eastern Avenue residence on or about November 23, 2017, during an apparent home invasion. Based on circumstantial evidence and statements made after the shooting by one of RM#1's parents, and other circumstantial evidence, your affiant believes

3

that RM#1 was alone at the Eastern Avenue residence on November 23, 2017, at WOODS' direction, in order to protect the marijuana and cash at the residence. RM#1 was armed, as evidenced by his admissions and evidence derived from the crime scene, including trajectory analysis of shots fired within the residence.

11. According to RM#1, at least two individuals attempted to enter the residence from the rear of the home while RM#1 was present. Two-way gunfire ensued, during which RM#1 was beaten and shot multiple times. One of the intruders was killed, by RM#1, after RM#1 was able to gain access to a firearm. RM#1, it should be noted, stated that he was merely a short-term roommate and was not a "guard" although he admitted that he was aware of the marijuana distribution operation and assisted with it.

12. The marijuana business continued out of the Eastern Avenue address after the shooting of RM#1. A source of information - SOI#2 – reported living with WOODS, CUSTER, and HARVEY at the Eastern Avenue address between approximately April and July 2018. According to SOI#2, HARVEY and CUSTER were involved in arming and operating the marijuana business with WOODS at Eastern Avenue during this period.

13. SOI#2 described the Eastern Avenue address as a something like a fast food operation for marijuana. SOI#2 reported that, on an average day, between four and a dozen individuals between the ages of approximately 18 and 25 would hang out at the residence between approximately 3:00 pm and 2:00 am, playing videogames and smoking marijuana in the living room.

14. In addition to these longer-term visitors, SOI#2 stated that the stream of customers to the Eastern Avenue residence was constant. SOI#2 estimated that a dozen or more individuals would stop by Eastern Avenue to purchase marijuana on any given day. WOODS

4

would often keep the marijuana in large, pound-size vacuum sealed bags on the coffee table as customers came in and out to purchase. In addition to WOODS, SOI#2 acknowledged that HARVEY, CUSTER, and SOI#2 would assist with marijuana sales by collecting money or by doling out the marijuana in quantities of anywhere from ½ gram to several ounces.[1]

15. According to SOI#2, it was routine for WOODS, HARVEY and CUSTER to carry firearms on their persons and to keep them in plain view, such as by leaning rifles against the wall, laying guns on furniture, while customers were coming and going from the home. SOI#2 stated that the roommates kept their firearms at times in a large safe in the kitchen on the main floor of the residence, and that WOODS kept quantities of cash on his person or in a small safe in his room.[2] SOI#2 described WOODS as someone who would "flash" his cash on occasion, to his roommates as well as third parties.

16. Two additional sources of information – SOI#3 and SOI#4 – provided statements similar to that of SOI#2. In separate interviews, SOI#3 and SOI#4 described a frequent flow of marijuana customers through the Eastern Avenue address during the period when WOODS, CUSTER and HARVEY were living there. SOI#3 and SOI#4 did not live at the Eastern Avenue address but spent several afternoons and evenings there each week. While there, SOI#3 and SOI#4 observed WOODS, HARVEY and CUSTER selling drugs to customers as they came and left from the home. SOI#3 and SOI#4 also observed WOODS, HARVEY and CUSTER in possession of firearms. According to SOI#3 and SOI#4, the guns often would be "laying around" the living room as people hung out, or carried by one of the roommates in his waistband.

---

[1] SOI#2 was advised of his/her Miranda rights before speaking voluntarily with agents about this matter.
[2] On information and belief, neither SOI#2, HARVEY, CUSTER, nor WOODS has been convicted of a crime punishable by imprisonment for a term in excess of one year, commonly called a felony.

5

17. This distribution activity at Eastern Avenue culminated in the death of Subject #1 on July 10, 2018. SOI#3 and SOI#4 were present in the residence at the time of the shooting. According to SOI#3, three individuals arrived in a single vehicle during the afternoon of July 10, 2018, for the purpose of acquiring marijuana. SOI#3 recognized the individuals as Subject #1 and two acquaintances. SOI#3 described a tense verbal exchange when the trio arrived, during which there appeared to be mistrust between the parties about the intended marijuana transaction. According to SOI#3, WOODS and HARVEY communicated with the three customers, demanding to see the cash before handing over the drugs.[3] Subject #1 and his/her companions, in turn, demanded to see the drugs before handing over the cash. According to SOI#3, the transaction was unsuccessful, and the trio left without the marijuana for which they had come.

18. Subject #1 and companions came back later, at around 9:45 pm, according to SOI#3 and SOI#4.[4] Security footage from a nearby residence depicts Subject #1's vehicle arriving at Eastern Avenue, with headlights extinguished upon approach. According to SOI#3 and SOI#4 in separate interviews, a brick or other object then came into the living room through the front plate glass window. SOI#3 and SOI#4 stated that WOODS, HARVEY and CUSTER began shooting from the residence as individuals associated with Subject #1's vehicle returned fire. Based in part on Subject #1's position in the vehicle and its direction of travel, Subject #1 was shot in the head and neck and killed as he/she attempted to drive away from the residence. From ballistics evidence, investigators were able to determine that some but not all of the

---

[3] In a recorded interview, CUSTER stated that WOODS was having an "argument" with Subject #1, and that HARVEY was involved as well.
[4] SOI#2 denied being present at the time of the shooting, which information was corroborated by SOI#3, SOI#4 and other circumstantial evidence.

6

firearms involved in the shooting have been recovered by police.

19. SOI#3 and SOI#4 stated that the two of them, along with WOODS and HARVEY, fled the Eastern Avenue residence after the shooting and drove to a location some distance from Roanoke. Over the next couple of hours or so, WOODS and HARVEY discussed stories they would tell police about the incident. Based on the manner in which Eastern Avenue associates managed their firearms, as set forth herein, and CUSTER's admission during a recorded interview to his affinity for firearms in general, investigators believe that firearms associated with the shooting incidents on Eastern Avenue remain in the custody or control of WOODS, CUSTER, HARVEY, and their associates, concealed but not necessarily gone.[5]

20. On July 11, 2018, the day after the shooting, CUSTER told investigators during a recorded interview that the firearms found inside the Eastern Avenue residence on the night of the shooting were his. Among firearms recovered from the residence that night, investigators identified a 12-gauge, over/under shotgun with a sawed-off barrel. In discussing his firearms, CUSTER stated: "There's a Remington 12 gauge, I don't know the number for it, for the model, but it is an over/under double barrel that I sawed off myself." When asked by a detective to confirm that he sawed the barrel off, CUSTER responded, "Yeah. I actually did a clean job, if you ever get to see it."[6] A search of the National Firearms Registration and Transfer Record revealed that this firearm is unregistered. The barrel of CUSTER's recovered shotgun measures approximately 14 inches.

---

[5] During a recorded interview on July 11, 2018, CUSTER stated that he liked guns and had grown up hunting and shooting.
[6] The sawed-off shotgun recovered from Eastern Avenue and associated with CUSTER by witness statements is a Remington, model SPR 310, 12-gauge shotgun with an over/under double barrel.

7

21. On or about November 19, 2018, ATF agents conducted a follow-up interview with CUSTER at the offices of ATF. CUSTER was transported to and from the interview by ATF agents. At the conclusion of the interview, agents returned CUSTER to the residence he shared with his girlfriend, Renee Dickson, and HARVEY, located at 2201 Ridgefield Street NE, in Roanoke, Virginia. When they returned to the Ridgefield residence, HARVEY answered the door holding a firearm in his right hand. Agents could smell a strong odor of marijuana emanating from the house. CUSTER provided consent to search the residence. During the consent search, agents located two firearms, including the one in HARVEY's possession, and approximately 80 grams of marijuana, a majority of which was contained in a heat sealed bag. Distribution paraphernalia, to include packaging materials and scales, was also observed. The firearms were a Sig Sauer 9mm pistol and a Springfield Armory, model 1911, .45 caliber pistol. HARVEY had been holding the .45 caliber.

22. HARVEY explained to agents during the search that "business" had been very slow since they moved from the Eastern Avenue residence. HARVEY stated that "they," referencing CUSTER and himself, were only selling about a "QP" of marijuana a week from the Ridgefield Street address. In the training and experience of your affiant, a "QP" refers to a quarter-pound of marijuana.

23. Three days after the shooting, on July 13, 2018, WOODS was arrested in Bedford County in a car belonging to SOI#1, in possession of approximately two pounds of marijuana. The marijuana was packaged in vacuum-sealed bags of the type SOI#2, SOI#3, and SOI#4 described HARVEY, CUSTER, and WOODS acquiring at Eastern Avenue. WOODS was charged in Bedford County with possession with the intent to distribute marijuana, a felony, which charge remains pending for trial on November 19, 2019 (Case Number CR19-000275).

8

24. WOODS was given a bond pending resolution of his Bedford charges.

25. Since his release on bond, WOODS has continued to distribute marijuana from his residences located at 1506 Compton Street and 1445 Brooks Avenue, both in Roanoke.

26. For example, a source of information, SOI#7, spent time with WOODS at the Compton Street apartment in June 2019. SOI#7 described a pattern of behavior by WOODS at the Compton Street apartment similar to what had been the practice on Eastern Avenue. According to SOI#7, numerous individuals visited WOODS' Compton Street apartment throughout the day to purchase marijuana. SOI#7 stated that he/she was present for many of these transactions and observed WOODS storing his marijuana in shoe boxes inside the apartment. Investigators have viewed, through SOI#7's social media accounts, videos taken in June 2019 that show WOODS engaged in marijuana transactions from within the Compton Street apartment, with HARVEY and other individuals present as well.

27. On September 19, 2019, agents executed a federal warrant to search WOODS' Brooks Avenue residence. WOODS was taken into custody and his phone seized. During a Mirandized interview following his arrest, WOODS admitted to acquiring more than 220 pounds of marijuana for distribution from the Eastern Avenue residence he shared with HARVEY and CUSTER, covering the approximate period of November 2017 to July 2018, when Subject #1 was shot and killed.

28. Events described in this affidavit occurred within the Western District of Virginia.

## CONCLUSION

29. Based on the foregoing, your affiant asserts that there is probable cause to believe that Chad CUSTER manufactured and possessed an unregistered firearm in violation of Title 26, United States Code, Section 5861; that WOODS, HARVEY, and CUSTER conspired with each

9

other and others to possess with the intent to distribute and to distribute marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 846 and 841(a)(1); and that on or about July 10, 2018, WOODS, CUSTER, and HARVEY possessed one or more firearms in furtherance of a drug trafficking offense, in violation of Title 18 United States Code, Section 924(c).

Respectfully submitted,

_William Engel_ ATF, TFO
William Engel
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn before me on September 26, 2019:

_Robert S. Ballou_
UNITED STATES MAGISTRATE JUDGE
Robert S. Ballou